UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-cv-611

| | |
|---|---|
| BRIAN M. WATSON, Individually and on behalf of All Others Similarly Situated, | ) ) COMPLAINT FOR VIOLATIONS OF ) THE FEDERAL SECURITIES LAWS |
| Plaintiff, | ) ) 15 U.S.C. §§78j(b), 78t(a) |
| vs. | ) 17 C.F.R. §240.10b-5 ) |
| ADVANCE AUTO PARTS, INC., THOMAS R. GRECO, and JEFFREY W. SHEPHERD, | ) CLASS ACTION ) ) DEMAND FOR JURY TRIAL ) |
| Defendants. | ) |

Plaintiff Brian M. Watson ("Plaintiff"), by and through his undersigned attorneys, individually and on behalf of all others similarly situated, allege the following based upon personal knowledge as to his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included a review of public documents, conference calls, announcements, and United States ("U.S.") Securities and Exchange Commission ("SEC") filings made by or on behalf of Advance Auto Parts, Inc. ("AAP" or the "Company"); wire and press releases published by and regarding AAP; analysts' reports and advisories about the Company; and information readily obtainable on the internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of all persons who purchased or otherwise acquired AAP securities between November 16, 2022 and May 30, 2023, inclusive (the

"Class Period"), against AAP and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act" or the "Exchange Act")). As set forth in detail below, Defendants violated Section 10(b) of the 1934 Act by failing to disclose pertinent information relevant to the Company, or, alternatively providing information about the Company which was materially misleading or deceptive.

2.  AAP is a retailer specializing in automobile parts and accessories, serving both automobile professionals and non-professional consumers. The Company operates stores called "Advanced Auto Parts," "Autopart International," "Carquest," and "Worldpac." AAP operates over 4,700 stores (across all four brands) in the U.S. and Canada.

3.  At the beginning of the Class Period, on November 16, 2022, the Company held its quarterly earnings call for investors. During the earnings call, President and Chief Executive Officer ("CEO") Thomas R. Greco ("Greco") announced "strategic pricing initiatives" aimed to help propel margins growth into 2023. Specifically, Greco stated "we've tested and will make surgical pricing actions in certain categories to enable us to better address changes in competitive pricing dynamics."

4.  The Company initiated these "strategic pricing initiatives" despite Greco's recognition that "our research has consistently indicated that price is not the most important driver for choice for professional customers." He later stated, "availability is the #1 driver of choice for the professional installers, and as we said many times, price is much lower down the list."

5.  On February 28, 2023, the Company held its quarterly earnings call for the 2022 fourth quarter. During that call, Greco stated, "[w]e continue to execute the disciplined inventory and pricing actions we discussed this quarter. These actions contributed to stronger results, and we expect to improve parts availability throughout 2023, which we believe is the single most important

driver to accelerate line growth." Greco also dismissed the impact of the U.S. economy and other macroeconomic factors on sales and margins. He stated, "we remain cautious surrounding the macroeconomic backdrop, including the potential for ongoing pressure on low-to-middle income consumers. However, our 2023 guidance is underpinned by continued industry strength with the drivers of demand remaining positive." The Company then issued its 2023 guidance, projecting net sales of $11.4 billion to $11.6 billion and an operating income margin of 7.8% to 8.2%. The Company also remained "committed to paying quarterly cash dividends," according to Executive Vice President and Chief Financial Officer ("CFO"), Jeffrey W. Shepherd ("Shepherd").

6. On May 31, 2023, AAP held its quarterly earnings call for 2023 first quarter. During that call, Greco conceded, "our financial results in the first quarter were well below expectations." Because the Company slashed prices on products, Greco stated "we had less price realization than plans, which put substantially higher pressure on our product margin price." Shepherd revealed during the May call that the Company's strategic pricing program resulted in the Company being "unable to price to cover product costs in the quarter." The Company consequently revised downward its 2023 guidance to an operating margin of 5% to 5.3% from the previously announced 7.8% to 9.2% margins.

7. Investors reacted negatively to these revelations and the reduced 2023 guidance. On May 30, 2023, AAP shares closed at $112.20. The following day, on May 31, 2023, AAP shares closed at $72.89 on unusually high volume. This $39.31 difference reflects a 35% one-day drop.

## JURISDICTION AND VENUE

8. Jurisdiction is conferred by Section 27 of the 1934 Act, 15 U.S.C. §78aa. The claims asserted herein arise under Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

9. AAP's headquarters is 4200 Six Forks Road, Raleigh, North Carolina.

10. Venue is proper in this District pursuant to Section 27 of the 1934 Act. The violations of law complained of herein occurred in part in this District, including the dissemination of materially false and misleading statements complained of herein into this District.

11. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff Brian M. Watson purchased AAP securities as described in the Certification filed herewith. Plaintiff suffered damages in connection with his purchase of AAP stock. Plaintiff's Certification is incorporated herein by reference.

13. Defendant AAP is incorporated in Delaware and with its principal executive offices at 4200 Six Forks Road, Raleigh, North Carolina 27609. During the Class Period, the Company's stock traded on the New York Stock Exchange ("NYSE") stock market under the symbol "AAP."

14. Defendant Greco was at all relevant times President and CEO of AAP. He retired from that position in mid-2023.

15. Defendant Shepherd is and at all relevant times was Executive Vice President and CFO of the Company.

16. Defendants Greco and Shepherd (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of AAP's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their

issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired AAP stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

18. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. AAP trades on the NYSE and has more than 59 million shares outstanding, owned by hundreds, if not thousands, of persons.

19. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to members of the Class which predominate over questions that may affect individual Class members include:

    (a)    whether Defendants violated the 1934 Act;

    (b)    whether Defendants omitted and/or misrepresented material facts;

(c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) whether the price of AAP stock was artificially inflated; and

(f) the extent of damages sustained by Class members and the appropriate measure of damages.

20. Plaintiff's claims are typical of those of the Class because Plaintiff and the other Class members sustained damages from Defendants' wrongful conduct.

21. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

22. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

23. On November 16, 2022, Defendants discussed AAP's strategic price initiative during the Company's earnings conference call for the third quarter of 2022.

24. During third quarter conference call, Greco stated, "while our research has consistently indicated that price is not the most important driver of choice for professional customers, we've tested and will make surgical pricing actions in certain categories to enable us to better address changes in competitive pricing dynamics."

25. Regarding the surgical pricing program, Greco explained: "I think what is new is we successfully tested some surgical pricing actions in some of the more challenged categories, and

we're going to essentially continue to do that and expand more broadly. Our goal overall is to price to cover cost increases. However, we're going to make some investments in key categories where we expect to drive incremental top line growth." Although Greco indicated the "goal overall is to price to cover cost increases," Greco concealed how reducing the price of goods would serve to cover those cost increases.

26. Greco further stated "[i]n terms of operating income margin rate, we've delivered significant margin expansion since the start of 2021. We're also executing strategic initiatives to enable further margin expansion." Greco also concluded that "based on our updated guidance, we'll deliver the second consecutive year of net sales growth and adjusted operating margin expansion."

27. On February 28, 2023, Defendants discussed AAP's strategic pricing program and its performance during the Company's earnings conference call for the fourth quarter of fiscal 2022.

28. During the earnings conference call, Greco indicated the strategic pricing plan and "the decisions we took in the latter half of the year led to improved performance in Q4, and we expect that to continue into 2023." Greco also presented an optimistic picture of the surgical pricing plan. There, he said "we talked about surgical price investments to close the competitive gap, and we've made a lot of progress there. ... [T]he actions we're taking are enabling us to drive more top line sales in Pro[fessional] and still show margin expansion." The Company then issued revised 2023 guidance for $11.4 billion to $11.6 billion in sales and operating income margin between 7.8% and 8.2%.

29. At the same time, Greco dismissed the impact of the U.S. economy and other macroeconomic factors on sales and margins. He stated, "we remain cautious surrounding the macroeconomic backdrop, including the potential for ongoing pressure on low-to-middle income

consumers. However, our 2023 guidance is underpinned by continued industry strength with the drivers of demand remaining positive." Shepherd also downplayed the macroeconomic environment, namely inflation. He stated the revised 2023 guidance was "underpinned by a cautious macroeconomic outlook given the pressure on low and middle-income consumers, balanced with the continued industry strength as the primary driver's demand." Shepard further stated, "[i]n terms of inflation, particularly product inflation, we do think it's going to be more a first half versus a second half [issue]."

30. Defendants' statements in the foregoing paragraphs were false and/or materially misleading because they: 1) misrepresented the efficacy of AAP's strategic pricing initiative and the impact of price reductions; 2) omitted and/or concealed the negative impacts of the pricing initiative; 3) provided investors with an overly optimistic perception of AAP's operations; and 4) created the false impression that inflation and macroeconomic factors had an insubstantial impact on the Company's margins.

## LOSS CAUSATION AND ECONOMIC LOSS

31. Before markets opened on May 31, 2023, the Company issued a press release, filed its quarterly report on Form 8-K and hosted an earnings conference call. During the conference call, the Company disclosed its financial results for the first quarter of fiscal 2023.

32. In pertinent part, Greco stated during the earnings conference call that, "our financial results in the first quarter were well below expectations." Greco attributed the negative quarterly results, in part, to the strategic pricing program. He said: "In terms of competitive pricing, we've talked in the past based on our research, the most important criteria for an installer to make choices about their parts supplier starts with availability, followed by consistency of delivery and relationship. Pricing has historically been the third or fourth criteria for an installer. ... In order to

sustain our targeted competitive price position in Q1, we had less price realization than plans, which put substantially higher pressure on our product margin rate."

33. Shepherd elaborated, stating further that "[i]n terms of gross margin, we experienced headwinds associated with targeted price investments, which were above expectations due to the current competitive landscape. It's important to point out that as we remain committed to maintaining the competitive price targets we've established and have now attained in key categories, we were unable to price to cover product costs in the quarter."

34. During the question-and-answer portion of the call, Morgan Stanley's Simeon Ari Gutman engaged in the following exchange:

> <Gutman>: And can you give any sense for how much of the gross margin impact is due to the acceleration of moving some lines of your network versus price investments?
>
> <Shepherd>: It's primarily the price investment. I mean that has been the single biggest driver. We aren't able to cover inflation with price, and that was by far the biggest driver.

35. During the call, Shepherd revealed that AAP was reducing its cash dividend to $0.25/share down from $1.50/share. Operating margin was further reduced to 5.0% to 5.3%.

36. Analysts expressed dismay over the May 2023 earnings call. For instance, Scot Ciccarelli ("Ciccarelli") of Truist wrote, "[w]hile our concerns over the reversal in their prior pricing strategy caused us to downgrade the stock following their 3Q22 report, this unravel has been faster and more violent than we had anticipated." Ciccarelli further observed, "it is very difficult to reverse one of your biggest drivers (raising or optimizing prices) to improve your competitive pricing but continue to drive margin expansion." Similarly, Michael Baker of Davidson wrote the pricing "strategy does not seem to be working as this industry is not typically driven by price, but rather parts availability and service."

37. These revelations proved influential to investors as AAP shares lost $39.31 in one day, reflecting a 35% one day drop from close on May 30, 2023 to close on May 31, 2023.

38. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of AAP securities and operated as a fraud or deceit on Class Period purchasers of AAP securities by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market on May 31, 2023, the price of AAP stock fell precipitously. As a result of their purchases of AAP securities during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws when the truth about AAP was revealed through the disclosures specified herein, which removed the artificial inflation from the price of AAP stock.

39. By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of AAP's business and prospects. Defendants' false and misleading statements had the intended effect and caused AAP stock to trade at artificially inflated levels throughout the Class Period.

40. As a direct result of the disclosure identified herein, the price of AAP stock fell precipitously, causing real economic loss to investors who had purchased AAP stock at artificially inflated prices during the Class Period.

41. The price decline on May 31, 2023 was a direct result of the nature and extent of Defendants' fraud being revealed to investors and the market through the May 2023 earnings call. The timing and magnitude of the price declines in AAP stock negate any inference that the losses suffered by Plaintiff and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent

conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of AAP stock and the subsequent significant decline in the value of AAP stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## SCIENTER ALLEGATIONS

42. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PRESUMPTION OF RELIANCE

43. At all relevant times, the market for AAP securities was an efficient market for the following reasons, among others:

    (a) AAP stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

    (b) as a regulated issuer, AAP filed periodic public reports with the SEC;

    (c) AAP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (d) AAP was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44. As a result of the foregoing, the market for AAP stock promptly digested current information regarding AAP from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of AAP stock during the Class Period suffered similar injury through their purchase of AAP stock at artificially inflated prices and a presumption of reliance applies under the fraud-on-the-market doctrine.

45. A Class-wide presumption of reliance is also appropriate in this action under the U.S. Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of Defendants' material Class Period omissions regarding, among other things, that the strategic pricing initiative was likely to fail due to the industry's imperviousness to price, that requirement is satisfied here.

## NO SAFE HARBOR

46. The "Safe Harbor" warnings accompanying AAP's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.

47. Defendants are also liable for any false and misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of AAP who knew that the FLS was false. In addition, the FLS were contradicted by existing, undisclosed material facts that were required to be disclosed so that the FLS would not be misleading. Finally, most of the purported Safe Harbor warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide meaningful disclosures of the relevant risks.

## COUNT I

### Against All Defendants for Violations of
### Section 10(b) and Rule 10b-5(a) Promulgated Thereunder

48. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

49. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and other Class members in connection with their purchases of AAP stock during the Class Period.

51. In addition to the duties of full disclosure imposed on Defendants as a result of their affirmative false and misleading statements to the public, Defendants had a duty to promptly disseminate truthful information with respect to AAP's operations and performance that would be material to investors in compliance with the integrated disclosure provisions of the SEC, including with respect to the Company's revenue and earnings trends, so that the market price of the Company's stock would be based on truthful, complete, and accurate information. SEC Regulations S-X (17 C.F.R. §210.01, et seq.) and S-K (17 C.F.R. §229.10, et seq.).

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members have suffered damages in connection with their respective purchases and sales of AAP securities during the Class Period, because, in reliance on the integrity of the market, they paid artificially inflated prices for AAP securities and experienced loses when the artificial inflation was released from AAP securities as a result of the revelations and stock price decline detailed herein. Plaintiff and the other Class members would not have purchased AAP securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

53. By virtue of the foregoing, Defendants violated Section 10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder.

## COUNT II

### Against the Individual Defendants for Violations Section 20(a) of the Exchange Act

54. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about AAP's misstatements.

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by AAP which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AAP disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AAP to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AAP's common stock.

58. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AAP to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

{00577069;1 }                                   15

Case 5:23-cv-00611-D-BM     Document 1     Filed 10/27/23     Page 15 of 17

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. Declaring that this action is a proper class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as a Class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon; and

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 27, 2023.                    Respectfully submitted,

**SCHILLER & SCHILLER, PLLC**
/s/ David G. Schiller
David G. Schiller (NC Bar # 26713)
304 East Jones Street
Raleigh, NC 27601
Telephone: (919) 789-4677
Facsimile: (919) 789-4469
Email: David@SchillerFirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100

Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*